UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20cv223

| | |
|---|---|
| **ROGER DALE MORRISON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| **ANDREW SAUL,** ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 15, 17). The matter is ripe for review. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff Roger Dale Morrison brought this action under section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision denying his application for disability insurance benefits ("DIB") under title II of the Act, 42 U.S.C. §§ 401-433.

Mr. Morrison applied for benefits on or about June 16, 2016, when he filed applications for a period of disability and DIB. (Tr. 174–75). Those applications were denied initially and on reconsideration. (Tr. 98–106, 108–14). On March 1, 2019, an ALJ held an administrative

hearing, which Mr. Morrison attended with counsel. (Tr. 35–70). On April 15, 2019, the ALJ issued a decision that Mr. Morrison was not disabled within the meaning of the Act. (Tr. 15–23).

On March 3, 2020, the Appeals Council denied Mr. Morrison's request for review, rendering the ALJ's April 15, 2019, decision the Commissioner's final decision. (Tr. 1–6). Mr. Morrison then filed this civil action for judicial review of the Commissioner's final decision. The Commissioner has answered Mr. Morrison's Complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the

-2-

Case 3:20-cv-00223-MOC   Document 19   Filed 03/02/21   Page 2 of 15

reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV. Substantial Evidence

#### a. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b. Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

   a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

   b. An individual who does not have a "severe impairment" will not be found to be disabled;

   c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

   d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

   e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

   **c. The Administrative Decision**

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). At step one, the ALJ found that Mr. Morrison had not engaged in substantial gainful activity since his alleged onset date. (Tr. 17). At step two, the ALJ found that Mr. Morrison had the following severe impairments: multiple sclerosis and neck pain. (Tr. 18–19). At step three, the ALJ found that Mr. Morrison did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 19–20).

Before proceeding to step four, the ALJ determined that Mr. Morrison had the residual functional capacity to perform medium work, further stating that Mr. Morrison could only occasionally climb stairs. (Tr. 20). The ALJ explained the basis for these findings in detail. (Tr. 20–23). At step four, the ALJ found that Mr. Morrison could still perform his past relevant work as an order clerk. (Tr. 23). As a result, the ALJ concluded that Mr. Morrison was not disabled under the Act. (Id.).

**V.     Discussion**

Mr. Morrison advances claims regarding limitations that he contends should have been included in the ALJ's residual functional capacity finding. First, Mr. Morrison claims that the ALJ did not sufficiently evaluate the need for a hand-held assistive device, i.e., a cane, under Social Security Ruling ("SSR") 96-9p. Next, Mr. Morrison asserts that the ALJ's residual functional capacity finding did not include all limitations allegedly arising from Mr. Morrison's multiple sclerosis ("MS") and neck pain. Finally, Mr. Morrison claims that the ALJ should have included in the hypothetical question asked of the vocational expert numerous additional limitations, such as limitations relating to Mr. Morrison's ability to remain on task, his ability to

-5-

Case 3:20-cv-00223-MOC    Document 19    Filed 03/02/21    Page 5 of 15

maintain attendance at work, his need for a specialized chair, and visual limitations. As discussed below, these arguments do not present a basis for remand.

**a. The ALJ's Conclusions Regarding Mr. Morrison's Need for a Cane.**

Mr. Morrison first claims that he needs a cane for balance and that the ALJ's decision should be remanded because the ALJ did not include an analysis of Mr. Morrison's use of a cane under SSR 96-9p, 1996 WL 374185 (S.S.A. July 2, 1996) ("SSR 96-9p"). (Pl. Br. 12). The Court disagrees and finds that remand is not appropriate based on this claimed error.

SSR 96-9p "does not impose a requirement that the ALJ make an express finding of medical necessity in all cases in which a claimant uses a cane." Christon v. Colvin, 3:15 cv00305-RJC, 2016 WL 3436423, at *5 (W.D.N.C. June 15, 2016) (citing Morgan v. Comm'r, Soc. Sec., No. CIV. JKB-13-2088, 2014 WL 1764922, at *1 (D. Md. Apr. 30, 2014)). Rather, it simply "provides guidance regarding the required showing for an ALJ to reach the conclusion that a claimant's hand-held device is 'medically required.'" Id. (quoting Morgan, 2014 WL 1764922, at *1). The claimant bears the burden of providing "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185; see also Timmons v. Colvin, No. 3:12-cv-00609-GCM, 2013 WL 4775131, at **7, 8 (W.D.N.C. Sept. 5, 2013) (noting that the claimant bears the burden of proof regarding the use of an assistive device).

Here, Mr. Morrison has not provided the medical documentation necessary to establish that his cane is medically required. He begins by asserting, in conclusory fashion, that even though his cane was not prescribed by a healthcare professional, it is nonetheless medically

necessary. (Tr. 12–13). Mr. Morrison has not met the specific requirement, however, applicable in this appeal, that he must submit or cite medical evidence or information documenting his claim regarding the use of a device to assist with ambulation and provide additional information "describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185. While some treating sources observed that Mr. Morrison presented with and used a cane for ambulation, no treating source stated that Mr. Morrison needed his cane or that it was required for balance.[1] (See, e.g., Tr. 358, 363, 433, 527). Nor does the medical opinion evidence contain a statement that Mr. Morrison needed a cane. For example, when Dr. Jack N. Drummond reviewed Mr. Morrison's medical records, he noted that Mr. Morrison had been using a cane "on his own" and he further stated that there was "no evidence in the file to substantiate [that a] cane was needed for ambulation." (Tr. 91).

In sum, Mr. Morrison offers no medical evidence regarding his cane or the circumstances he needs it for. (Pl. Br. 12–14). Instead, he offers his own lay testimony and cites examination findings regarding his lower extremities. (Pl. Br. 13). But that evidence merely describes Mr. Morrison's symptoms—it does not provide medical documentation establishing that Mr. Morrison needed the cane because no provider ever stated that Mr. Morrison needed the cane, only that he sometimes presented with one. See SSR 96-9p, 1996 WL 374185 at *7. Nor did any source provide the "additional information" necessary to "describe the circumstances for which it is needed." Mr. Morrison has failed to carry his burden of producing medical documentation showing that his cane is medically required. Accordingly, there was no need for

---

[1] Mr. Morrison's alleged need for a cane is not consistent throughout the record either. For example, while one treating source observed that he presented in June and October 2015 with a cane for ambulation (not balance), when he arrived in a wheelchair for treatment at an emergency room in July 2015, the treatment notes stated that he "ambulated without assistance" and "has no difficulty walking." (Tr. 308, 358, 363).

-7-

the ALJ to evaluate the need for a medically required handheld assistive device in conjunction with Mr. Morrison's residual functional capacity.

**b. The ALJ's Conclusions Regarding Functional Limitations Relating to Mr. Morrison MS and Neck Pain.**

Mr. Morrison next identifies specific functional limitations relating to MS and neck pain that he claims should have been included in the residual functional capacity finding. (Pl. Br. 14–15). These arguments are without merit because the ALJ provided the explanatory discussion necessary to support his findings and because substantial evidence supports the ALJ's conclusions.

Residual functional capacity is an administrative assessment of the most an individual can do despite the limitations caused by physical and mental impairments. 20 C.F.R. § 404.1545(a); Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1-2 (July 2, 1996). Mr. Morrison bears the burden of providing evidence establishing the degree to which his impairments limit his residual functional capacity. 20 C.F.R. § 404.1245(a)(3). The ALJ bears sole responsibility for assessing a claimant's residual functional capacity. 20 C.F.R. § 404.1546(c).

In making the residual functional capacity assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR 96-8p, 1996 WL 374184, at *2. The ALJ is not obliged, however, to precisely mirror any particular piece of evidence, or to discuss every piece of evidence in the record. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing 42 U.S.C. § 405(b)(1) and affirming an ALJ decision that contained a discussion of "the whole record," instead of a description of every piece of evidence in the record); Felton-Miller v. Astrue, 459 F. App'x 226,

230–31 (4th Cir. 2011) (explaining that an ALJ should base an individual's residual functional capacity on all available evidence); Griffin v. Comm'r, Soc. Sec. Admin., No. SAG-16-274, 2017 WL 432678, at *3 (D. Md. Jan. 31, 2017 ("ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining [residual functional capacity]"). Rather, the ALJ must review and synthesize the record in its entirety and make findings about what the evidence shows. See 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim we make findings about what the evidence shows."). Moreover, a reviewing Court must read the ALJ's decision as a whole, meaning the decision should be affirmed even if the supporting discussion for a particular fact is found in a section of the decision covering some other aspect of the sequential review process. Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. Dec. 14, 2011) (affirming ALJ decision on Listings, in part, because the rest of the ALJ's decision made clear the reasoning for the conclusion regarding the Listings); Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. May 2, 2018) (reading an ALJ decision as a whole and affirming based on the fact that the ALJ stated a coherent basis for conclusions).

Mr. Morrison first claims that findings in the record support visual limitations. (Tr. 15). The record does not support this claim because there is no medical evidence showing that Mr. Morrison's symptoms interfere with his ability to work. In fact, nearly all of the treatment notes and examination findings were normal with regard to these symptoms. For example, when Mr. Morrison received treatment for high blood pressure at Caromont Regional Medical Center in February 2015, he denied vision problems, including double vision, and visual fields were intact. (Tr. 289, 290). Other treatment notes contain Mr. Morrison's statements regarding visual symptoms (see, e.g., Tr. 358, 421, 492, 495), but optic examinations were consistently normal and even though those examinations were not uniformly normal, the record contains no

statement suggesting that Mr. Morrison's symptoms were so extreme as to cause work-related limitations. (See, e.g., Tr. 358, 363, 388, 398–99, 422, 434, 436, 438, 496, 502). Furthermore, there is no medical opinion evidence stating that Mr. Morrison's visual symptoms caused any work-related limitations. Given the relatively normal examination findings, and the lack of medical opinion evidence supporting Mr. Morrison's claim, substantial evidence supports the ALJ's decision not to include a visual limitation in the residual functional capacity finding.

Similarly, the treatment notes in the record contain little evidence of how any dizziness, vertigo, or fatigue might have affected Mr. Morrison's ability to work, although Mr. Morrison claims that they somehow required the ALJ to include in the residual functional capacity finding a statement that Mr. Morrison would be off task for 20% of every workday and would miss more than two workdays per month. (Pl. Br. 15). As discussed above, Mr. Morrison did report some symptoms along these lines (see, e.g., Tr. 421, 433, 494, 495), but his neurological examinations were consistently normal or only mildly abnormal. (See, e.g., Tr. 358, 363, 388, 398–99, 422, 430, 434, 436, 438, 449–50, 454–55, 491, 496–97, 502–03). And, as with the visual symptoms, there is no opinion evidence stating that these symptoms caused any work-related limitations, much less specific limitations regarding his ability to remain on task for a certain percentage of the day or miss a certain number of workdays per month. (Pl. Br. 15). Therefore, substantial evidence supports the ALJ's conclusion. It does not support the additional restrictions Mr. Morrison claims.

The record does not support additional restrictions to account for limitations relating to Mr. Morrison's neck pain either. In support of this claim, Mr. Morrison cites his hearing testimony, certain examination findings, and a September 2015 MRI scan of his cervical spine. (Pl. Br. 15–17 (citing Tr. 68–69, 313–14, 412, 506, 522)). The ALJ discussed this evidence in

his decision, providing a detailed discussion of Mr. Morrison's hearing testimony and the cervical MRI. (Tr. 20–21). He also cited various treatment notes and examination findings relating to Mr. Morrison's cervical spine and neck pain. (Tr. 21). In doing so, the ALJ acknowledged "periods" where examinations showed abnormal neurological findings, including, among others, numbness, weakness, and decreased sensation. (Id.). However, the ALJ also noted that "medical examinations consistently showed that [Mr. Morrison] has normal strength and sensation, and a supple neck without cervical motion tenderness, carotid bruit, tracheal deviation, thyromegaly, or lymphadenopathy." (Id.). In support of these statements, the ALJ cited numerous pieces of medical evidence throughout the record. (Id. (citing Tr. 283–84, 290, 292, 358, 361, 363, 386, 388, 398–99, 410, 421–22, 425, 430, 433–38, 450, 455, 481, 489, 494, 496–97, 503, 508, 510, 513–14, 528, 531–32)). This evidence supports the ALJ's statements. For example, in November 2015, Mr. Morrison sought treatment for "worsening neck pain," but, upon examination, his neck was "supple" with normal range of motion. (Tr. 386, 388). Along the same lines, when Mr. Morrison received follow-up treatment in October 2016 for increased neck pain, neck and neurological examination findings were normal. (Tr. 481). And although Mr. Morrison's neck pain increased enough for his physicians to prescribe Tramadol, and also to increase the dose, the examination findings do not indicate that this treatment, or other treatment, was somehow ineffective or that it caused additional work-related limitations.

This is clear from grossly normal neck and neurological findings throughout 2018. (Tr. 503, 513–14, 531). Taken together, these findings support the ALJ's conclusions regarding Mr. Morrison's residual functional capacity. They do not support the more extreme degree of limitation Mr. Morrison claims. Nor does the MRI evidence support the extreme degree of limitation Mr. Morrison claims. As stated in the MRI, Mr. Morrison's chronic disc disease and

-11-

Case 3:20-cv-00223-MOC   Document 19   Filed 03/02/21   Page 11 of 15

degenerative changes involved only "mild" stenosis. Nothing in the report shows nerve root involvement that might have supported the degree of limitation Mr. Morrison claims. (Tr. 313–14).

Finally, Mr. Morrison claims that the ALJ should have included in the residual functional capacity finding a statement that Mr. Morrison required a special chair or neck support to remain seated. (Pl. Br. 16). In support of this alleged limitation, Mr. Morrison cites only his hearing testimony (Tr. 46, 68–69) and two disability reports he filed in support of his claim. (Tr. 222, 252). He cites no medical evidence or opinion evidence. In fact, no medical source made a statement indicating that Mr. Morrison could not sit for prolonged periods or that, to do so, Mr. Morrison would require some kind of special chair or support.

Furthermore, examination findings contemporaneous with one of the disability reports, which was dated July 2016, were grossly normal. On July 19, 2016, Mr. Morrison saw Dr. Douglas Jeffery. (Tr. 435–36). When Dr. Jeffery examined Mr. Morrison, he noted only that Mr. Morrison's neck was "supple," a normal finding. (Tr. 436). Substantial evidence supports the ALJ's conclusions regarding Mr. Morrison's abilities, not the otherwise unsupported subjective claims regarding a special chair or neck support.

In light of this evidence, Mr. Morrison's argument amounts to little more than a request that this Court set aside the ALJ's analysis and substitute findings more favorable to Mr. Morrison. This Court's scope of review, however, is limited to a review of the existing record to determine if substantial evidence supports the ALJ's conclusion. See Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (explaining that a district court's review of a Social Security disability matter "looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations"). To the extent there was conflicting

-12-

evidence regarding the medical necessity of an assistive device, it was the ALJ's role to resolve those conflicts. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (acknowledging that it is the ALJ's responsibility to address conflicts when "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled") (internal citations and quotations omitted); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (stating that a reviewing court may not reweigh the evidence or substitute its own judgment, even if it appears to the court that the evidence weighs in favor of a different result); see also Arnold v. Berryhill, No. 3:18-cv-391-WCM, 2019 WL 2883815, at *3 (W.D.N.C. June 12, 2019) (stating that the court's role is not to reweigh conflicting evidence). In sum, here, the ALJ discussed the appropriate evidence in his decision, and that evidence supports the ALJ's residual functional capacity finding, not the more extreme limitations Mr. Morrison's urges.

**c. The ALJ's Failure to Ask the Vocational Expert about Work-related Limitations.**

Finally, Mr. Morrison argues that the ALJ's decision should be vacated and remanded because the ALJ did not ask the vocational expert ("VE") to provide testimony or evidence based on the appropriate limitations. (Pl. Br. 17–18). Specifically, Mr. Morrison claims that the VE should have been asked whether someone like Mr. Morrison could still do his past relevant work as an order clerk if he also had the following limitations: (1) off task for 20% of every workday; (2) would miss more than two workdays per month; (3) require a special chair with neck support; and (4) had visual work-related limitations. (Pl. Br. 17–18). This argument fails because the questions the ALJ asked the VE at the administrative hearing were based on limitations that were supported by substantial evidence in the record. The record does not support the additional limitations Mr. Morrison discusses in support of his motion.

-13-

Case 3:20-cv-00223-MOC  Document 19  Filed 03/02/21  Page 13 of 15

In posing hypothetical questions to the VE, the ALJ's duty only requires him to rely on testimony involving hypothetical individuals with limitations supported by evidence in the record; conversely, an ALJ need not adopt testimony based on, or even ask about, limitations that are not supported by the record. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); see also Hailey v. Comm'r of Soc. Sec., 284 F. App'x 100, 104–05 (4th Cir. 2008) (affirming ALJ's omission from a hypothetical question evidence from an opinion accorded less weight than other opinion evidence); Kearse v. Massanari, 73 F. App'x 601, 604 (4th Cir. 2003) (affirming ALJ's decision to omit the conclusions of opinion evidence properly rejected); Baldwin v. Barnhart, 444 F. Supp. 2d 457, 463 (E.D.N.C. 2005).

Here, as discussed above, the ALJ appropriately explained the evidence supporting his residual functional capacity finding. Moreover, the evidence does not support the four additional limitations Mr. Morrison claims. Thus, the ALJ was not required to ask the VE about being off task for 20% of a workday, missing more than two days of work per month, a special chair to support Mr. Morrison's neck, or visual limitations. (Pl. Br. 17–18). Even if there was support for those limitations, a decision to remand this case would require the Court to exceed the scope of its review by substituting its own findings regarding the evidence for those the ALJ made.

In sum, the VE's testimony involved limitations supported by substantial evidence. The ALJ was not required to ask about additional limitations because they were not supported by the record. As a result, substantial evidence supports the ALJ's finding that Mr. Morrison could still perform his past relevant work as an order clerk.

**VI.  Conclusion**

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments

of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 15) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 17) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: March 2, 2021

Max O. Cogburn Jr.
United States District Judge

-15-

Case 3:20-cv-00223-MOC   Document 19   Filed 03/02/21   Page 15 of 15